**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SYLVIA DOMINGUEZ-CURRY,
*Plaintiff-Appellant,*

v.

NEVADA TRANSPORTATION
DEPARTMENT; ROC STACEY,
*Defendants-Appellees.*

No. 03-16959

D.C. No.
CV-01-00630-
DWH/RAM

OPINION

Appeal from the United States District Court
for the District of Nevada
David W. Hagen, District Judge, Presiding

Argued and Submitted
February 17, 2005—San Francisco, California

Filed September 14, 2005

Before: Sidney R. Thomas, Richard A. Paez, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Paez;
Dissent by Judge Callahan

13185

**COUNSEL**

Kenneth J. McKenna, Reno, Nevada, for the plaintiff-appellant.

Brian Sandoval, Attorney General, Teresa J. Thienhaus, Senior Deputy Attorney General, Las Vegas, Nevada, for the defendants-appellees.

**OPINION**

PAEZ, Circuit Judge:

Sylvia Dominguez-Curry ("Dominguez") sued her employer, the Nevada Department of Transportation

("Department"), and her supervisor, Roc Stacey ("Stacey"), alleging that they subjected her to a hostile work environment and failed to promote her on the basis of her gender, in violation of Title VII of the Civil Rights Act of 1964. Dominguez appeals the district court's grant of summary judgment in favor of the Department and Stacey. We hold that Dominguez presented ample evidence from which a reasonable trier of fact could conclude that she was subjected to a hostile work environment and that the decision not to promote her was motivated at least in part by her gender. Accordingly, we reverse the district court's judgment and remand for a trial on both of Dominguez's Title VII claims.

## Background

Since 1994, Dominguez has worked under the supervision of Roc Stacey in the Nevada Department of Transportation's contract compliance division. Stacey routinely made demeaning comments to women in the division. For example, Stacey told Dominguez and two other women in the division that "he wished he could get men to do [their] jobs," that "women have no business in construction," and that "women should only be in subservient positions." In response to a work-related question from Dominguez, Stacey replied, "if you girls were men, you would know that." Referring to Dominguez and other women in the division, Stacey said, "You guys are being paid more than you even should be getting paid." Further, Stacey called the division's female assistant "stupid," and on one occasion, he kicked another female employee's chair while she was sitting in it because he was upset with her.

Stacey also told sexually explicit jokes in the workplace. Dominguez described the jokes as "the blond with the big tits type jokes and what she did with whom and those types of jokes." Dominguez said "those were like everyday jokes."

Shortly after Dominguez began working for Stacey, Stacey commented to her, "Every woman that comes to work in our

division gets pregnant. . . . I hope you don't get pregnant." According to Dominguez, "Roc [Stacey] just would never let up about women having no business working if they had little children to take care of at home." In reference to one woman who announced she was pregnant shortly after she began working in the division, Stacey commented, "the bitch knew she was pregnant when I hired her." Stacey told Dominguez that he "did not want to deal with another pregnant woman." After this woman returned from maternity leave, Stacey told her she "should try and transfer to another position where being a mommy works for her." Stacey told Dominguez, "I want her out" and said "he was going to make her travel so that she would leave."

While Stacey was serving as Acting Contract Compliance Manager, he discussed with Dominguez the changes he would make when he became Contract Compliance Manager. He said,

> When I fill the position for the Program Officer III, I am going to hire a guy and he is going to do all the contract investigations and stay on top of all the contract field work that I haven't been doing for the past six years. That guy is going to be traveling 70% of the time.

Dominguez testified that

> after this incident [Stacey] further said that he was going to hire a man. . . . His answer would always be he wants a man to do the job. He doesn't feel that I or a female could go out into the field and do the work that a man is required to do. Number one, he specifically told me my stature's a problem.

After returning from a fishing trip with Stacey, Dominguez's husband reported to Dominguez that Stacey said that

he was never going to give you (Dominguez) the job, he has a problem with you because you're a small female, he's afraid that you could be in jeopardy in some of the places that he has to go to, that he's a big guy and he's afraid to go to those job sites sometimes, so he wouldn't feel it would be fair to send me — such a small person and a female to some of these job sites where all these construction workers are.

Stacey initially failed to qualify for a promotion to Contract Compliance Manager. After learning that a woman had qualified, Stacey said he "would never work for a woman" and told Dominguez that "if [the woman] got hired he was going to take off as much annual leave as he had on the books, look for work elsewhere and in the mean time he was not going to help us or the new manager in any way."

Stacey eventually qualified for the Contract Compliance Manager position and was promoted in November 1999. Around the same time, the Department announced an opening in the contract compliance division for the Program Officer III position, involving enforcement of federal and state labor laws and disadvantaged business subcontracting requirements for Department projects. The announcement described the position as "open competitive," meaning state employees did not receive preference; rather "eligible persons on ranked lists are certified solely in score order." The minimum qualifications for the position were listed as follows:

graduation from an accredited college or university in public administration or related field and two years of experience in planning, coordinating or administering a program; OR two years experience as a Program Officer II in Nevada State service; OR graduation from high school or the equivalent and six years of experience in planning, coordinating or administering a program; OR an equivalent combination of education and experience.

Dominguez applied for the Program Officer III position. She and another applicant, Phillip Andrews, initially ranked fifth among seven top applicants, all of whom were interviewed jointly by Stacey and Mark Elicegui, Chief Construction Engineer. Andrews had a college degree in a related field, had attended law school for two years, and had worked in Wyoming as a labor standards compliance officer for the Department of Employment for three years. Dominguez had worked in the contract compliance division for several years, graduated from high school, attended vocational school and community college, but she did not have a college degree.

After the interviews, Stacey and Elicegui compared notes. Both had selected Phillip Andrews as their first choice, and Julia Mason, who originally ranked sixth, as their second choice. Stacey and Elicegui stated that they arrived at their choices independently and shared no information until the interviews were over. Andrews accepted the job.

Dominguez testified, "I believe he (Andrews) was very qualified, and he may be more qualified than me, but that was not the - I just knew because he had the right body parts is why he got hired, in addition to being qualified." Although Dominguez said she had no reason to believe that Elicegui was biased against women, she asserted that Stacey would only hire a man. Elicegui, however, stated that Stacey never "indicate[d] to me that he had already made up his mind to hire a male for this position" and that during the interviews, Stacey showed no bias for or against any of the candidates. Stacey said gender did not play a role in the selection process, and that "Phil Andrews' qualifications were simply superior to everyone else's."

After exhausting her remedies before the Equal Employment Opportunity Commission ("EEOC"), Dominguez filed a complaint against the Department and Stacey in the United States District Court for the District of Nevada, alleging hostile work environment sexual harassment and failure to pro-

mote on the basis of gender, in violation of Title VII. Stacey also alleged intentional infliction of emotional distress and sex discrimination under Nevada law. The Department and Stacey moved for summary judgment. The district court determined as a matter of law that 1) Dominguez's hostile work environment claim failed because Dominguez did not demonstrate that Stacey's conduct was sufficiently severe or pervasive to alter the conditions of her employment, and 2) Dominguez could not prevail on her failure-to-promote claim because she did not present specific and substantial evidence that the proffered explanation for defendants' hiring decision —that Philip Andrews was more qualified—was merely a pretext for sex discrimination. Accordingly, the district court granted the defendants' motion for summary judgment.[1] Dominguez timely appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and review *de novo* the district court's grant of summary judgment. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 639 (9th Cir. 2003). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* at 639-40.

## Discussion

Dominguez argues that the district court erred in granting summary judgment to the Department and Stacey (collectively, "appellees") because genuine factual disputes exist as to both her hostile work environment and failure-to-promote claims.[2] We hold that a reasonable trier of fact could conclude

---

[1]Because it dismissed the only federal claims, the district court declined to exercise supplemental jurisdiction over Dominguez's state law claims and dismissed these claims without prejudice.

[2]As a preliminary matter, appellees argue that Dominguez's appeal should be dismissed because her opening brief and excerpts of record fail

that (1) Stacey's conduct was sufficiently severe or pervasive to create a hostile work environment, and that (2) appellees' decision not to hire Dominguez was motivated at least in part by her gender. Accordingly, we reverse and remand for a trial on both of Dominguez's claims.

## I.

**[1]** Dominguez first argues that the district court erred in granting summary judgment to the appellees on her claim of hostile work environment sexual harassment. Title VII makes it an unlawful employment practice for an employer to discriminate against an individual with respect to the terms, conditions, or privileges of employment because of the individual's sex. 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has held that "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (stating that in order to prevail on a hostile work environment sexual harassment claim, plaintiff must show that her "workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment" (alterations and citation omitted)).

---

to comply with the Federal Rules of Appellate Procedure and Ninth Circuit Rules. Although not models of compliance with the Rules, Dominguez's opening brief and excerpts of record are sufficient to apprise this court of the relevant issues before it. Moreover, Dominguez cured the deficiencies in her opening brief by filing errata that included additional citations to the record. Dominguez also submitted supplemental excerpts of record that included materials omitted from the initial volume. We therefore decline to dismiss Dominguez's appeal for failure to comply with the Federal Rules of Appellate Procedure and Ninth Circuit Rules.

**[2]** To prevail on a hostile work environment sexual harassment claim, the plaintiff must show that her work environment was both subjectively and objectively hostile; that is, she must show that she perceived her work environment to be hostile, and that a reasonable person in her position would perceive it to be so. *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 871-72 (9th Cir. 2001); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998). The plaintiff also must prove that "any harassment took place 'because of sex.' " *Nichols*, 256 F.3d at 872 (quoting *Oncale*, 523 U.S. at 79).

In analyzing whether the alleged conduct created an objectively hostile work environment, we must assess all the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (internal quotation marks and citation omitted). " 'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). Here, we assess whether the workplace was objectively hostile from the perspective of a reasonable woman. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994).

The district court concluded that Dominguez's claim failed as a matter of law because Dominguez did not demonstrate that Stacey's conduct was sufficiently severe or pervasive to alter the conditions of her employment. Specifically, the district court concluded that Stacey's alleged conduct comprised "a series of isolated, sporadic incidents" that did not rise to the level of a hostile work environment. We disagree.

**[3]** A review of the record reveals that genuine factual disputes exist as to both the severity and pervasiveness of

Stacey's conduct. Dominguez testified in her deposition that Stacey made numerous demeaning comments about women in the workplace, including stating that "women should only be in subservient positions"; that women "have no business in construction"; that he "would never work for a woman"; that "he wished he could hire men to do our jobs"; that women in the Department were being paid more than they deserved; and that he wanted a man to fill the Program Officer III position. Dominguez also testified that Stacey exhibited hostility to women who took maternity leave, and that Stacey told sexually explicit jokes in the office.

**[4]** This evidence is more than sufficient to create a genuine issue of material fact as to whether Stacey's conduct was sufficiently severe or pervasive to create a hostile work environment. In concluding otherwise, the district court failed to view the evidence in the light most favorable to Dominguez. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987) (holding that on summary judgment the court must view the facts and draw all inferences in the light most favorable to the nonmoving party). For example, in characterizing Stacey's conduct as consisting of "isolated, sporadic incidents" and "only a handful of incidents spread over a five year period," the district court ignored Dominguez's testimony that Stacey's graphic and sexually explicit jokes "were like everyday jokes," that Stacey said he would never work for a female "so many different times," and that Dominguez "could write a book about all the different [times]" Stacey said he did not "feel that [Dominguez] or a female could go out into the field and do the work that a man is required to do." The district court erred in disregarding this evidence about the frequency of Stacey's discriminatory remarks. *See Breeden*, 532 U.S. at 270-71 ("[W]hether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct . . . ." (internal quotation marks omitted)).

**[5]** The district court also inappropriately weighed Dominguez's credibility in dismissing her allegations as "vague and conclusory," "unsupported," and "self-serving." The court noted that Dominguez did not cite the dates on which Stacey made discriminatory remarks, and that she failed to describe his jokes "with any specificity." However, Dominguez's failure to offer precise dates does not defeat her claim, especially in light of her testimony that the jokes were "like everyday" occurrences. Moreover, Dominguez was not required to recite Stacey's remarks verbatim; she provided sufficient details of the jokes' content "to enable a reasonable trier of fact to conclude that discrimination had occurred." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 n.5 (9th Cir. 2004).

**[6]** The district court also improperly dismissed Dominguez's allegations as consisting of nothing more than "self-serving statements in her own deposition and affidavit." Such observations go to whether Dominguez is credible, a determination that is exclusively within the province of the factfinder at trial, not the district court on summary judgment:

> [A]t this stage of the litigation, the judge does not weigh disputed evidence with respect to a disputed material fact. Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions. These determinations are within the province of the factfinder at trial.

*T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31 (citations omitted); *see also McGinest*, 360 F.3d at 1113 n.5 ("[I]t is axiomatic that disputes about material facts and credibility determinations must be resolved at trial, not on summary judgment.").

Further, contrary to the district court's characterization, Dominguez's evidence does not consist solely of her own self-serving statements. Indeed, Stacey in his affidavit admits to much of the conduct Dominguez alleges, including: that he

made the "joking comment" about every woman in the Division getting pregnant; that he "like[s] to joke and so . . . would occasionally make comments" about topics discussed in the office including "husbands, ex-husbands, boyfriends, female problems, pregnancy symptoms"; and that he told another female employee who returned from maternity leave that she should consider a new job if she could not handle the traveling.

**[7]** Finally, the district court erroneously disregarded evidence of discriminatory comments that Stacey directed to other women in the division. As we have held, "if . . . hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at the plaintiff." *McGinest*, 360 F.3d at 1117.[3] This is especially true here, where the close proximity of the workspaces in the division meant that Dominguez could hear many of the hostile comments targeted at other employees. *See id.* at 1117-18 (holding that the district court erred in discounting racially hostile remarks directed at employees other than plaintiff where the comments were made in plaintiff's presence). Viewing the evidence in the light most favorable to Dominguez, we hold that a reasonable factfinder could conclude that Stacey's repeated derogatory and humiliating remarks were sufficiently severe or pervasive to create a hostile work environment.[4] We therefore reverse the district court's grant of sum-

---

[3]In *McGinest*, we addressed racial hostility in the workplace; however, "[h]ostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n.10 (2002).

[4]Appellees also assert that Dominguez failed to present sufficient evidence to satisfy the "subjective hostility" prong of her hostile work environment claim. They point out that Dominguez acknowledged that she and Stacey had a friendly working relationship and that she laughed at some of his jokes. However, appellees ignore Dominguez's testimony that she "finally said that unless they were a funny joke, I did not want to hear them," and her statement that "[a]fter a while I told Roc [Stacey] I didn't appreciate the rude jokes and felt that he didn't like women in general."

mary judgment on Dominguez's sexual harassment claim and remand for a trial on the merits.

## II.

**[8]** Dominguez also argues that the district court erred in granting summary judgment in favor of the appellees on her failure-to-promote claim. Title VII makes it an unlawful employment practice for an employer to refuse to hire an individual because of her sex. 42 U.S.C. § 2000e-2(a)(1). In responding to a summary judgment motion in a Title VII disparate treatment case, a plaintiff may produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant's decision, or alternatively may establish a prima facie case under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See McGinest*, 360 F.3d at 1122. Here, Dominguez relied on the *McDonnell Douglas* framework.

To make out a prima facie case under *McDonnell Douglas*, a plaintiff must show that (1) she belongs to a protected class; (2) she applied for and was qualified for the position she was

Dominguez also complained to the EEOC. This evidence is more than sufficient to create a triable issue as to whether Dominguez found Stacey's conduct subjectively offensive. *See McGinest*, 360 F.3d at 1113 ("Subjective hostility is clearly established in the instant case through McGinest's unrebutted testimony and his complaints to supervisors and to the EEOC").

Appellees further argue that Dominguez's decision to apply for the Program Officer III position undermines her claim of subjective hostility because she "knew that Stacey would continue to be her supervisor if she did get the promotion, yet that did not stop her from applying." We reject this contention. An employee does not implicitly condone a supervisor's discriminatory conduct by applying for a promotion. To conclude otherwise would thwart the purpose of Title VII, which is to eradicate discrimination from the workplace and ensure that all employees have equal opportunity to thrive and advance in their careers.

denied; (3) she was rejected despite her qualifications; and (4) the employer filled the position with an employee not of plaintiff's class, or continued to consider other applicants whose qualifications were comparable to plaintiff's after rejecting plaintiff. *See McDonnell Douglas*, 411 U.S. at 802. At summary judgment, the degree of proof necessary to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

If established, the prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff. *Id.* The burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Id.* If the employer meets this burden, the presumption of unlawful discrimination "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). The plaintiff then must produce sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext for discrimination. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000). The plaintiff may show pretext either (1) by showing that unlawful discrimination more likely motivated the employer, or (2) by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-22 (9th Cir. 1998). Ultimately, the plaintiff's burden is to "produce some evidence suggesting that [the defendant's] failure to promote [her] was due in part or whole to discriminatory intent." *McGinest*, 360 F.3d at 1123.

**[9]** Here, it is undisputed that Dominguez established a prima facie case of discrimination, and that the Department and Stacey articulated a legitimate non-discriminatory reason for their conduct: Phillip Andrews was the more qualified candidate. The district court concluded that Dominguez's

claim fails as a matter of law because she did not present "specific and substantial" evidence that appellees' explanation for their hiring decision was merely a pretext for gender discrimination. We disagree with the district court's conclusion.

**[10]** First, the district court erred in requiring that Dominguez's evidence be both specific and substantial because such a requirement only applies to circumstantial, not direct, evidence of discriminatory motive. Here, Dominguez did not rely on circumstantial evidence; rather, she offered direct evidence of animus, which creates a triable issue as to appellees' motive in failing to promote her "even if the evidence is not substantial." *Godwin*, 150 F.3d at 1221; *see also Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1128 (9th Cir. 2000) (holding that the district court erred in requiring direct evidence of pretext to be specific and substantial). Direct evidence is "evidence, which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin*, 150 F.3d at 1221 (internal quotation marks omitted). "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005).

**[11]** Here, the record reveals direct evidence of appellees' discriminatory animus. This evidence includes Stacey's sexist comments that "he wished he could get men to do [women employees'] jobs," that "women have no business in construction," that "women should only be in subservient positions," that he "would never work for a woman," and his comment, "if you girls were men, you would know that." The district court erroneously discounted this evidence as "only vaguely recounted and hav[ing] nothing to do with either the plaintiff or the decisional process."

**[12]** First, there is nothing vague about Stacey's comments; rather, they overtly exhibit his hostility to women in the workplace. Second, Stacey's sexist remarks are probative of his

discriminatory intent even if he directed them to other women in the division. *See Coghlan*, 413 F.3d at 1095 n.6 (holding that even if an employer does not target his remarks directly at the plaintiff, "when evidence establishes the employer's animus toward the class to which the plaintiff belongs, the inference to the fact of discrimination against the plaintiff is sufficiently small that we have treated the evidence as direct"). Third, Stacey's comments were not "stray" or unrelated to the decisional process. Stacey was one of two decisionmakers in the hiring of the Program Officer III position. Where a decisionmaker makes a discriminatory remark against a member of the plaintiff's class, a reasonable factfinder may conclude that discriminatory animus played a role in the challenged decision. *See Godwin*, 150 F.3d at 1221 (holding that a comment that a supervisor "did not want to deal with another female" was not a stray remark, was not ambivalent, and was tied directly to the position plaintiff sought).

Moreover, the district court erred in disregarding Stacey's comment that he was "going to hire a guy" for the Program Officer III position. The district court concluded that Stacey's use of the term "guy" in stating whom he wanted for the Program Officer III position was ambiguous because "guy" can be used to refer to a man or a woman. While this interpretation might be plausible if Stacey had not made other sexist remarks, "[it] is not the province of a court to spin such evidence in an employer's favor when evaluating its motion for summary judgment. To the contrary, all inferences must be drawn in favor of the non-moving party." *Chuang*, 225 F.3d at 1129.

Properly viewed in the light most favorable to Dominguez, Stacey's comment cannot be deemed ambiguous, especially in light of Dominguez's additional deposition testimony that "after this incident [Stacey] further said that he was going to hire a man." The district court improperly discounted this testimony on the ground that Dominguez "could give no specif-

ics" regarding when Stacey made these comments. As noted, a plaintiff need not recite precise dates of an employer's discriminatory conduct, especially where she alleges that the conduct was pervasive. While a factfinder is free to conclude at trial that the plaintiff's account is insufficiently detailed to be believable, the district court must refrain from making such credibility assessments on summary judgment. As long as a reasonable factfinder could conclude that discrimination occurred, summary judgment must be denied.

Relying on a Sixth Circuit case that has since been overruled on other grounds, *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314-16 (6th Cir. 1989), the district court further concluded that "[e]ven if it is assumed that Stacey meant 'man,' a 'single, isolated discriminatory comment' is insufficient to withstand defendants' motion for summary judgment, even where the statement was made by plaintiff's direct supervisor." *Gagne* does not support the district court's conclusion. There, the court held that a supervisor's comment that he "needed younger blood" did not preclude summary judgment for the employer on plaintiff's age discrimination claim because the comment was both "isolated and ambiguous." *Id.* at 314. Here, in contrast, Stacey's statement that he was going to hire a man for the Program Officer III position was neither isolated nor ambiguous. Furthermore, in this circuit, we have repeatedly held that a single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer. *See, e.g.*, *Chuang*, 225 F.3d at 1128 (holding that a decisionmaker's remark that " 'two Chinks in the pharmacology department were 'more than enough' " was "an egregious and bigoted insult . . . that constitutes strong evidence of discriminatory animus on the basis of national origin"); *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1149 (9th Cir. 1997) (holding that an employer's reference to an employee as a "dumb Mexican" "could be proof of discrimination against [plaintiff] despite their reference to another agent and their utterance after the hiring decision").

**[13]** The district court stated that even if Stacey made discriminatory remarks, his involvement in the hiring decision was insufficient to overcome summary judgment because there was no evidence that Mark Elicegui, the ultimate decisionmaker, was tainted by Stacey's prejudice against women. In support of its proposition, the district court cited to *DeHorney v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 879 F.2d 459, 467-68 (9th Cir. 1989), in which we affirmed the grant of summary judgment in favor of the employer because the plaintiff failed to demonstrate a nexus between an agent's racially discriminatory remark and the plaintiff's termination. In *DeHorney*, however, the person who uttered the discriminatory remark was not involved in the decisionmaking process, and there was no evidence that the decisionmaker knew of the discriminatory remark or even knew the plaintiff's race. *Id.* at 468. Where, as here, the person who exhibited discriminatory animus influenced or participated in the decisionmaking process, a reasonable factfinder could conclude that the animus affected the employment decision. *Mondero v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005) ("An agent's biased remarks against an employee because of his or her gender are admissible to show an employer's discriminatory animus if the agent was involved in the employment decision."). Thus, contrary to the district court's conclusion, evidence of Stacey's discriminatory remarks is sufficient to permit a jury to find that animus affected the ultimate hiring decision, even if Stacey never communicated his bias to Elicegui and even if Elicegui himself was not biased against women. *See Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1560 (9th Cir. 1994) (noting that the university hiring process is "not insulated from the illegitimate biases of faculty members" and that among a group of fifteen decisionmakers, "even a single person's biases may be relatively influential").[5]

---

[5]Other circuits likewise have held that evidence of discriminatory animus exhibited by an individual who influenced or participated in the decisionmaking process is sufficient to overcome summary judgment. *See, e.g.*, *Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003) (holding that

**[14]** Finally, appellees argue that Dominguez's claim fails as a matter of law because Andrews was undisputedly the more qualified candidate.[6] However, the record reveals that there is a genuine factual dispute regarding which candidate was more qualified. Both Andrews and Dominguez satisfied the minimum requirements for the position. Although Andrews had a college degree, attended two years of law school, and had worked in a similar position in Wyoming, Dominguez had worked in the contract compliance division for several years. The district court therefore made an improper factual finding when it concluded that "Andrews certainly was the more qualified candidate." "Findings of fact should be eschewed in determining whether summary judgment should be granted." *Taybron v. City & County of San Francisco*, 341 F.3d 957, 959 n.2 (9th Cir. 2003) (holding, in the context of an employer's summary judgment motion on plaintiff's Title VII claims, that the district court erred in "weighing . . . the evidence and making findings rather than focusing on whether genuine issues of material fact are in dispute").

_____

the relevant inquiry is whether the person who made the discriminatory remark "had influence or leverage over" the formal decisionmaker); *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001) ("Under our case law, it is sufficient if those exhibiting discriminatory animus influenced or participated in the decision to terminate."); *Rose v. New York City Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (holding that a discriminatory remark made by a supervisor who had "enormous influence in the decision-making process" was sufficient evidence to allow a jury to find that plaintiff's demotion was motivated, at least in part, by an illegitimate factor); *Wells v. New Cherokee Corp.*, 58 F.3d 233, 237-38 (6th Cir. 1995) (imputing a supervisor's animus to the ultimate decisionmaker because the evidence showed that the two "worked closely together and consulted with each other on personnel decisions" and they "themselves testified that they acted jointly").

[6]Appellees argue that Dominguez conceded that Andrews was more qualified. This interpretation takes her comment out of context, however. Dominguez stated: "I believe he was very qualified, and he may be more qualified than me, but that was not the - I just knew because he had the right body parts is why he got hired, in addition to being qualified."

**[15]** Even if it were uncontested that Andrews' qualifications were superior, this would not preclude a finding of discrimination. An employer may be held liable under Title VII even if it had a legitimate reason for its employment decision, as long as an illegitimate reason was a motivating factor in the decision. 42 U.S.C. § 2000e-2(m); *Costa v. Desert Palace, Inc.*, 299 F.3d 838 (9th Cir. 2002), *aff'd*, 539 U.S. 90 (2003) (discussing mixed-motives theory of liability under Title VII). In *Costa*, we noted that the employer "may have had legitimate reasons to terminate Costa. . . . Nonetheless, the wide array of discriminatory treatment is sufficient to support a conclusion that sex was also a motivating factor in the decision-making process." *Id.* at 859; *see also Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1072 (9th Cir. 2004) (as amended) (noting that whether her case is analyzed as a single-motive or mixed-motives case, the plaintiff was entitled to a trial on her Title VII claim because the record revealed "a triable issue as to whether Stegall's termination was influenced by improper motives"). Here, the evidence ultimately may permit a finding that appellees had a legitimate reason for hiring Andrews over Dominguez. However, because a reasonable factfinder could conclude that the hiring decision was motivated at least in part by her gender, the district court erred in granting summary judgment in favor of the Department.

**[16]** The dissent agrees that Dominguez's claim properly may be analyzed under a mixed-motives framework. Nonetheless, relying on *Sischo-Nownejad v. Merced Community College District*, 934 F.2d 1104, 1110 (9th Cir. 1991), the dissent suggests that Dominguez cannot succeed on a mixed-motives theory because appellees have established that "absent discriminatory animus, the same decision would have been reached anyway." *Sischo-Nownejad*, however, predated Congress's 1991 Civil Rights Act Amendments to Title VII, which "expressly overruled the basic premise" that an employer could escape liability under Title VII if it proved it would have made the same decision even absent discrimina-

tory animus. *Costa*, 299 F.3d at 850-51 (explaining that the 1991 Amendments to Title VII were intended to overrule the Supreme Court's holding in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), that an employer could escape liability "simply by showing other sufficient causes"). Under the current statutory scheme, an employer who proves that it would have made the same decision in the absence of discriminatory animus will be entitled to a partial affirmative defense that limits the remedies a court may impose. 42 U.S.C. § 2000e-5(g)(2)(B). However, an employer who proves the defense will not avoid liability. Indeed, the language of Title VII and well-settled case law establish that an employer will be held to have committed an unlawful employment practice when the plaintiff "demonstrates that . . . sex . . . was *a motivating factor* for any employment practice, *even though other factors also motivated the practice*." *Id.* § 2000e-2(m) (emphasis added); *Costa*, 299 F.3d at 856-57.[7] Thus, contrary to the dissent's conclusion, it is irrelevant whether "the record amply supports NDOT's assertion that Andrews was the best qualified job applicant." Because Dominguez raised a triable issue

---

[7]A plaintiff need not decide at the outset of the case whether she wishes to pursue a single motive or a mixed-motives theory of discrimination. *Stegall*, 350 F.3d at 1072. To proceed to trial, the plaintiff need only raise a genuine dispute of fact as to whether sex was a motivating factor in the challenged decision. The question whether the evidence supports a single-motive or mixed-motives theory only arises *after* the parties have presented all of their evidence, and affects the trial court's jury instructions. As we explained in *Costa*, where the evidence supports a finding that discriminatory animus was

> one of two or more reasons for the challenged decision, at least one of which may be legitimate, the jury should be instructed to determine first whether the discriminatory reason was 'a motivating factor' in the challenged action. If the jury's answer to this question is in the affirmative, then the employer has violated Title VII.

299 F.3d at 856-57. "[I]f the jury then finds that the employer has proved the 'same decision' affirmative defense by a preponderance of the evidence," the remedies the employee receives will be limited. *Id.* at 857.

as to whether sex was "*a* motivating factor" for the Department's decision, she is entitled to a trial.[8]

**[17]** "Put simply, the plaintiff in any Title VII case may establish a violation through a preponderance of the evidence . . . that a protected characteristic played 'a motivating factor.' " *Costa*, 299 F.3d at 853-54. To overcome summary judgment, a plaintiff merely must raise a triable issue as to this question. Dominguez has met this burden. Accordingly, we hold that the district court erred in granting summary judgment in favor of appellees on Dominguez's failure-to-promote claim.

## Conclusion

In sum, we conclude that genuine factual disputes exist as to whether Stacey's conduct was sufficiently severe or pervasive to create a hostile work environment, and whether discriminatory animus played a role in appellees' decision not to promote Dominguez. We therefore reverse the grant of summary judgment on both claims and remand for a trial on the merits.[9]

**REVERSED AND REMANDED.**

---

[8]The dissent cites no authority—and none exists—for its distinction between termination and failure-to-promote cases. Title VII prohibits both actions when they are motivated in part or whole by discriminatory animus, notwithstanding the existence of a legitimate motivating factor. 42 U.S.C. § 2000e-2(m) (providing that an unlawful employment practice is established when . . . sex . . . was a motivating factor for *any employment practice*, even though other factors motivated the practice" (emphasis added)); *Id.* § 2000e-2(a)(1) (providing that it is "an unlawful employment practice" for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment . . . .").

[9]Because we reverse the grant of summary judgment on Dominguez's Title VII claims, we also vacate the district court's order dismissing Dominguez's supplemental state law claims and remand for further proceedings.

CALLAHAN, Circuit Judge, dissenting:

I agree with the majority opinion that Dominguez has alleged sufficient facts to survive summary judgment on her hostile work environment claim, but conclude that the district court properly granted summary judgment on her failure to promote claim. Even if we accept for purposes of summary judgment that a trier of fact could find that Stacey was biased against women, Dominguez has not rebutted the Nevada Department of Transportation's ("NDOT") legitimate, non-discriminatory reason for hiring Phillip Andrews and not promoting Dominguez. The record amply supports NDOT's assertion that Andrews was the best-qualified job applicant. Accordingly, I dissent.

Dominguez, a woman, joined the Contract Compliance Section of the Construction Division of NDOT in June 1994. In November 1999, an opening in the Contract Compliance Section was announced for a Program Officer III. Stacey with Mark Elicegui conducted joint interviews of the six applicants, including Dominguez, whose applications were forwarded to them by the State Personnel Board. Stacey and Elicegui individually rated Andrews as the top applicant and Julia Mason, a woman, as the second-ranking candidate. Andrews was ultimately offered the position.

Dominguez brought suit, alleging that Stacey's discriminatory views toward women motivated the decision to hire Andrews rather than Dominguez. The district court analyzed Dominguez's claim under the burden shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, once a plaintiff has made out a prima facie case of discrimination, the "burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991) (internal citation and quotation omitted). If the employer meets this burden, the presumption of unlawful discrimination

"simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

The plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* The plaintiff may carry this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Lindahl*, 930 F.2d at 1437.

NDOT's proffered nondiscriminatory reason for hiring Andrews and not Dominguez for the position was that "Andrews' qualifications for the position were vastly superior to [Dominguez's] qualifications." NDOT noted that Andrews holds a bachelor's degree in Labor Relations and Human Resources, and previously attended law school for two-and-a-half years. He worked, often in a supervisory capacity, in many positions over the years in the labor relations field, and, at one point, held a position in the Wyoming Department of Employment as a Labor Compliance Officer.

On the other hand, Dominguez's only completed coursework after high school is a course in Secretarial Skills from a vocational school and a course in Business Communications from a community college. Although she has worked in the Contract Compliance Division for over ten years, her position is a Program Assistant IV, a Grade 29 non-professional position in the clerical, administrative and support services class. Although her work experience qualified her to apply for the Program Officer III position, her qualifications were not comparable to Andrews's education and training.

Dominguez concedes that Andrews "was very qualified, and he may be more qualified than me," but argues that Andrews was hired because he was a man. She alleges that Stacey, one of the two men who interviewed her, stated in

early 1999 that "[w]hen I fill the position for the Program Officer III, I am going to hire a guy and he is going to do all the contract investigations and stay on top of all the contract field work that I haven't been doing for the past six years." She claims that Stacey's alleged discriminatory comment provides direct evidence that, even if Andrews was well qualified, that Stacey applied a discriminatory motive to the hiring process.

Although the district court framed its analysis on a single-motive pretext framework, the majority properly recasts Dominguez's claim under a mixed-motive framework. To succeed on a mixed-motive theory, the plaintiff is required to demonstrate "that it is more likely than not that a protected characteristic played a motivating part in the employment decision." *Sischo-Nownejad v. Merced Comty. Coll. Dist.*, 934 F.2d 1104, 1110 (9th Cir. 1991) (internal quotations omitted). The burden then shifts to the defendant to show that absent discriminatory animus, the same decision would have been reached anyway. *Id.*

Under a mixed-motive analysis, a plaintiff is required to show that an illicit motive played a causal role in a hiring decision even if other legitimate motives also existed. Here, as the district court found, Dominguez has not disputed Andrews's qualifications, or denied that Andrews was the best-qualified candidate. Instead, she merely reiterated that Stacey is biased against women. That is not enough. Where, as here, the justification offered by a defendant is that the best-qualified applicant was selected for a job, and the record contains substantial and specific evidence supporting that contention, an alleged illicit motive on behalf of one of the decisionmakers cannot be said to have played a motivating role in the employment decision.

This position is supported in our case law, which requires that a plaintiff produce evidence demonstrating that gender played a causal role in an employment decision. *Sischo-*

*Nownejad*, 934 F.2d at 1110; *see also DeHorney v. Bank of Am.*, 879 F.2d 459, 468 (9th Cir. 1989) (noting that there was no nexus shown between a racially discriminatory remark and an adverse hiring decision).

Of course, there are instances where a plaintiff's evidence of discriminatory intent raises material questions as to the sufficiency or exclusivity of an employer's alleged non-discriminatory reasons. This was true in the cases alleging *discriminatory terminations* cited by the majority, *Costa v. Desert Palace, Inc.* 299 F.3d 838 (9th Cir. 2002), *aff'd*, 539 U.S. 90 (2003), and *Stegall v. Citidel Broadcasting Co.*, 350 F.3d 1061, 1072 (9th Cir. 2004). Where, however, a plaintiff asserts a *failure to promote* claim and the person hired is objectively the most clearly qualified candidate, other factors such as an alleged discriminatory intent, do not come into play. Here, because Andrews was clearly the most qualified candidate, Stacey's alleged bias was not a "motivating factor." Accordingly, although Dominquez's failure to promote claim is properly considered in a mixed-motive framework, because Stacey's alleged bias was not a factor in the Department's decision to hire Andrews, there was no unlawful practice, and hence no liability that could be limited by an affirmative defense.

In conclusion, Dominguez has produced no evidence that demonstrates that NDOT's contention that it chose to hire an applicant who was better qualified than herself was unworthy of credence. Where the clearly best-qualified applicant is hired for a position, the existence of a discriminatory motive on the part of a decisionmaker does not in and of itself, even on summary judgment, establish that it played a motiving role in the decision not to promote a third party. As the district court's grant of summary judgment on this issue was proper, I would affirm that portion of the judgment.