**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 23 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BONNIE KENDALL,

        Plaintiff - Appellant,

  v.

STATE OF NEVADA, dba,
NEVADA DEPARTMENT OF
PUBLIC SAFETY, DOES I-X,

        Defendants - Appellees.

No. 10-15223

D.C. No. 3:08-cv-00521
LRH-VPC

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted March 18, 2011
San Francisco, California

Before: HUG, REAVLEY,[**] and W. FLETCHER, Circuit Judges.

Appellant Bonnie Kendall ("Kendall") appeals the district court's judgment

---

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. Rule 36-3.

[**] The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

for Appellee the State of Nevada ("Nevada") on Kendall's Title VII claim. Because Kendall presented enough evidence to defeat summary judgment on her sexual harassment claim,[1] we reverse.

We "review *de novo* the district court's grant of summary judgment." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1033 (9th Cir. 2005). "Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* On summary judgment, the judge may not make credibility determinations or weigh disputed evidence. *Id.* at 1036. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

"In order for [a hostile work environment sexual harassment claim] to survive summary judgment, [Kendall] must show that: (1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 892 (9th Cir. 2005). The parties do not dispute that Kendall

---

[1]Kendall does not appeal the denial of her claims of discrimination and retaliation.

has met the first two prongs. Instead, Nevada focuses its argument on the third prong, contending that the allegations do not rise to the level of being sufficiently severe or pervasive to sustain the hostile work environment claim. The district court agreed with Nevada, finding that the incidents were isolated, offhanded, and not threatening and therefore as a matter of law not severe or pervasive enough to alter the conditions of Kendall's employment.

"The Supreme Court has followed a 'middle path' with regard to the level of hostility or abuse necessary to establish a hostile work environment." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993)). "In evaluating the objective hostility of a work environment, the factors to be considered include the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks omitted). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Id.* (internal quotation marks omitted). Viewing the evidence in the light most favorable to Kendall, it is sufficient to withstand summary judgment.

Kendall testified that while she was Commander of the Nevada Department

3

of Public Safety Training Academy (the "Academy"), she got into an argument with Nevada Highway Patrol ("NHP") Trooper Brad Wine ("Wine") regarding Wine's refusal to take direct orders from her regarding staffing for the training program at the Academy. During the course of this argument, Wine told her to go "sit in [her office] and look pretty and do what you need to do as a woman." Then, using a dismissive hand gesture, he left the room. When Kendall reported this behavior to Wine's NHP supervisor, the supervisor laughed. The next day, in the presence of other troopers, Wine commented that he saw Kendall was not in her office. And, in response to her order to provide a worker's compensation form regarding an injured cadet, Wine responded that he might or might not, and that he would get her what he thought she should have. Kendall stated that Wine's insubordination in front of the other troopers was humiliating and undermined her authority, affecting her ability to do her job.

Kendall further testified that she reported this behavior to her direct supervisor, Lieutenant James Andrew McAfee ("McAfee"). He reportedly laughed and told her to have thicker skin. Additionally, he persuaded her not to report the incident immediately to keep from disrupting the cadets' training already in progress. When she did finally report the incident, she was again persuaded for the sake of the cadets to use an internal round-table procedure to discuss her

4

complaint. According to Kendall, the round-table was ineffective and became a forum for Wine to verbally abuse her. Although Wine was removed from the Academy, he continued his harassment by starting a boycott of the Academy by NHP, both for in-service training for its officers and for sending officers to lead training classes. Kendall's complaints about the boycott were never investigated. And, it was acknowledged in other witnesses' testimony that the boycott undermined Kendall's authority.

In addition to her encounters with Wine, Kendall was subjected to almost daily diatribes by McAfee on the subject of his female supervisor, Chief Jackie Sandage, who was involved in a lawsuit against several high-ranking DPS officers, including the Chief. McAfee knew that Kendall regarded Sandage as a role model and mentor. However, while talking with Kendall, McAfee repeatedly called Sandage a "fucking cunt," or "fucking bitch." He railed that Sandage knew the deal when she became a police officer, and that he hoped the defendants in Sandage's lawsuit chewed her up and spit her out. McAfee also told Kendall about his marital problems, which he related necessitated a weekly trip to Las Vegas for a "blow job." And during one conversation he favorably compared his penis to the size of a water bottle. Kendall testified that although she tried to prompt an investigation into McAfee's conduct, no investigation was ever undertaken.

5

Nevada contests many of these facts, stating that Kendall was subjected to only two isolated comments each by Wine and McAfee. Nevada also downplays the efficacy of the boycott. Additionally, Nevada contends that the statements about Sandage should not be considered because they were not made in Kendall's physical presence and that they were not about Kendall. These arguments are unpersuasive. First, at the summary judgment stage, we view the evidence in the light most favorable to Kendall, drawing all inferences in her favor. *Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S. Ct. at 2513. Therefore, even though Nevada disputes many of Kendall's statements, they are properly in evidence and at this stage presumed true. Second, the physical proximity of the speaker to the hearer is not the only factor in determining the severity of the harassment. The court also must consider the frequency of the statements, the severity of the statements, whether those statements could be humiliating, and whether they interfered with the hearer's work performance. Here, Kendall was subjected to almost daily comments of a vulgar, misogynistic nature regarding her female mentor. The fact that they were made from a distance does not negate their negative impact on Kendall as a matter of law. And third, the fact that the comments made by McAfee were not about Kendall is irrelevant. They were made during conversations with Kendall, about a woman Kendall admired, and were clearly vulgar and

6

misogynistic. That is enough. *Dominguez-Curry*, 424 F.3d at 1036 (holding that the district court had improperly disregarded evidence of discriminatory comments directed at other women). This treatment and language undermined Kendall's authority at the Academy and interfered with the training for which she was responsible.

The conduct to which Kendall was subjected continued a history of sexual abuse by Kendall's superiors. Unlike claims for discrete acts, such as termination and refusal to hire, hostile work environment claims are based on a series of actions, occurring over a period of time, which by themselves might not be actionable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–16, 122 S. Ct. 2061, 2073 (2002). Therefore, actions that fall outside the filing period may be considered for liability purposes if "the acts about which an employee complains are part of the same actionable hostile work environment practice." *Id.* at 120, 122 S. Ct. at 2076. In *Morgan*, the Supreme Court held that a plaintiff who adduced evidence that "the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers" avoided summary judgment on whether the actions were part of the same actionable hostile environment claim. *Id.* (internal quotation marks, citation, and alterations omitted).

7

Kendall's evidence is that in 1995 a supervisor asked to see her breasts, and that DPS Director Tom Togliatti engaged in a verbal altercation with Kendall in 2005 when she questioned the Department's promotion policies. In 1996 and 1997, Lieutenant Jimmy Young repeatedly referred to women in a vulgar and demeaning manner, and she was told many times during the 1990's that she should be baking cookies or between the sheets, and that during a 2005 DPS training course, women trainees were told to expect to be called "stupid bitch" and "whore." Although these actions did not involve Wine and McAfee, "the actionable wrong is the environment, not the individual acts that, taken together, create the environment." *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 638, 127 S. Ct. 2162, 2175 (2007) *overruled, in part, on other grounds by statute in* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 42 U.S.C. § 2000e-5(e)(3). Kendall alleges that DPS fostered a hostile working environment for women as illustrated by the acts she alleges. And, all of the actions she alleges can be considered a part of a "sexual harassment culture" that existed at DPS.

The judgment is REVERSED and the case is REMANDED for proceedings on Kendall's claim of hostile work environment sexual harassment.

8