TUNHEIM, District Judge,
concurring in part and dissenting in part.
I join the the majority’s conclusion that the district court properly granted summary judgment on plaintiffs’ retaliation claim, but I respectfully dissent from the conclusion that plaintiffs’ national origin discrimination claim fails.
Although the director of human resources instructed the supervisor to terminate plaintiffs, the immediate impetus for the director’s instruction was an email *677 from the supervisor describing plaintiffs’ conduct and noting that it amounted to “a termination offence.” And about one hour prior to sending the email that led to plaintiffs’ termination, the supervisor had allegedly said that he “hate[d] F’ing ... Filipinos” and was “sick and tired of Filipinos.” [1]
In my view, a reasonable factfinder could find that the supervisor “influenced or participated in the decisionmaking process” by sending the email, and viewing the facts in the light most favorable to plaintiffs, a reasonable factfinder could find that the supervisor’s “animus affected the employment decision.” Dominguez-Curry v. Nev. Tramp. Dep’t, 424 F.3d 1027, 1039-40 (9th Cir.2005); see also Poland v. Chertoff, 494 F.3d 1174, 1182 (9th Cir.2007) (“[I]f a subordinate ... sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action, the subordinate’s bias is imputed to the employer if the plaintiff can prove that ... the biased subordinate influenced or was involved in the decision or decisionmaking process.”). Therefore, I believe there is a sufficient connection between the discriminatory remarks and plaintiffs’ termination for a reasonable factfinder to determine that unlawful discrimination occurred. See 42 U.S.C. § 2000e-2(m) (“[A]n unlawful employment practice is established when the complaining party demonstrates that ... national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.”).
Accordingly, I would reverse and remand on plaintiffs’ national origin discrimination claim.

. As Renown notes, plaintiffs have relied only on the McDonnell Douglas framework throughout this action to establish their claim for national origin discrimination. Given the overtly discriminatory comments allegedly made by the supervisor, plaintiffs may have been able to establish a prima facie case without relying on McDonnell Douglas had they attempted to do so. See, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (“[I]f a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case. The McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination.'' (citation and internal quotation marks omitted)); E.E.O.C. v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir.2009) ("A plaintiff may establish a prima facie case either by meeting the four-part test laid out in [McDonnell Douglas ] or by providing direct evidence suggesting that the employment decision was based on an impermissible criterion.”). The supervisor's statements may have been sufficient for plaintiffs to survive summary judgment regardless of whether plaintiffs can establish the McDonnell Douglas prima facie test and despite Renown's proffered non-discriminatory justification for firing plaintiffs. See Boeing Co., 577 F.3d at 1049 ("When the evidence is direct, we require very little evidence to survive summary judgment.” (alteration and internal quotation marks omitted)).