UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 27 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| COREY CAMFIELD; MISTY CAMFIELD, | No. 17-56072 |
| Plaintiffs-Appellants, | D.C. No. 2:16-cv-02367-ODW-FFM Central District of California, Los Angeles |
| v. | |
| BOARD OF TRUSTEES OF REDONDO BEACH UNIFIED SCHOOL DISTRICT; et al., | ORDER |
| Defendants-Appellees. | |

Before:  WARDLAW and HURWITZ, Circuit Judges, and KORMAN,[*] District Judge.

The memorandum disposition with dissent filed on September 18, 2019, is amended by the memorandum disposition with dissent filed concurrently with this order.

With the amendment, the panel has voted to deny the petition for panel rehearing.  Judges Wardlaw and Hurwitz have voted to deny the petition for rehearing en banc, and Judge Korman so recommends.  The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc.  Fed. R. App. P. 35.

---

[*]  The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

The petition for panel rehearing and rehearing en banc, **Dkt. 66**, is **DENIED**, and no further petitions will be accepted.

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 27 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

COREY CAMFIELD and MISTY CAMFIELD,

Plaintiffs-Appellants

v.

BOARD OF TRUSTEES OF REDONDO BEACH UNIFIED SCHOOL DISTRICT, et al.,

Defendants-Appellees

No.    17-56072

D.C. No.
2:16-cv-02367-ODW-FFM

AMENDED MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, II, District Judge, Presiding

Argued and Submitted May 17, 2019
Pasadena, California

Before:   WARDLAW and HURWITZ, Circuit Judges, and KORMAN,[**] District Judge.

Corey and Misty Camfield appeal an adverse judgment in this action against

the Redondo Beach Unified School District and several of its administrators raising

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

1

claims under the Americans with Disability Act ("ADA"), 42 U.S.C. § 12132, the Rehabilitation Act, 29 U.S.C. § 794, and California law.[1] We have jurisdiction under 28 U.S.C. § 1291 and affirm.

1. The claims arise primarily out of a disruptive parent letter ("DPL") issued to Misty by the School District in March 2015, requiring her to seek permission from the principal of Jefferson Elementary School twenty-four hours prior to any on-campus visit. Three Camfield children were enrolled in the school at the time; one (Minor 1) suffers from cerebral palsy.

The DPL concerned Misty's conduct in February 2015, when she learned that a Ms. Comeaux was assigned as an instructional aide for Minor 1 for one entire day each week and a half day every other day of the week. The DPL recites that Misty "began approaching an instructional assistant, Ms. Comeaux, about her daily schedule starting in the morning of her first day on the job" and repeatedly called the cell phones of the two other instructional assistants to ask about Ms. Comeaux's assignment. The letter then focused on the following undisputed behavior by Misty:

1. On February 25, Misty asked Ms. Comeaux on school grounds if she would be the aide for "Minor 1" for the entire day, and if so, Misty said, "[T]hat shit's not flying."

2. The same day, Misty said to Ms. Siu, another instructional aide, on school grounds, "Do you know if this is gonna happen all the time? Because there ain't no fucking way that I'm going to put up with this shit. There is no way

---

[1] The Camfields' motion to strike portions of the answering brief is denied.

[Minor 1] is going to have just one aide at the middle school. I have a lawyer that's gonna take care of all this."

3. As a result of Misty's actions, "Ms. Comeaux felt so uncomfortable that she would hide inside a locked classroom until Misty left the campus in order to avoid the unpleasant interactions with her."

4. "On February 27, in a conversation with the school custodian," Misty said, "The kids are saying that Ms. Comeaux is an airhead and a ditz," and that another special education teacher was "breaking the IEP."

Prior to issuance of the March DPL, Misty had called the school principal a "fucking bitch" in a classroom and in the presence of Corey and a teacher. After meetings with the Camfields, the District had decided not to issue a DPL in response to that conduct.

2. Misty claims that the March DPL was in retaliation for her advocacy on behalf of Minor 1, and therefore violated the ADA and the Rehabilitation Act. But she does not contest that the events cited in the DPL took place. Nor can she contest that the School District reasonably concluded that her conduct was "likely to interfere with the peaceful conduct of the activities of the campus or facility." *See* Cal. Penal Code § 626.7(a).[2] Moreover, Misty produced no evidence that the twenty-four-hour notice requirement interfered with her ability to advocate on behalf of Minor 1. Even after the DPL was issued, Misty was not denied permission to attend any event involving Minor 1 or to meet with any representative of the District

---

[2]    As § 676.7(d) makes clear, § 676.7(a) applies to parents' conduct.

concerning the child's education.[3] *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("The [Title VII] antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."); *T.B. ex rel. Brenneise v. San Diego Unified School Dist.*, 806 F.3d 451, 472-73 (9th Cir. 2015) (applying Title VII retaliation framework to the ADA); *see also Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908 (9th Cir. 2013) ("The Rehabilitation Act is materially identical to and the model for the ADA. . .). Merely being required to make an appointment one day in advance to enter an elementary school campus does not produce an injury or harm forbidden by federal law, particularly when future advocacy is not banned.

3. We reject Misty's argument that the miscitation of statutory authority in the DPL is evidence of a pretext for discrimination. The letter was plainly authorized under California law, *see* Cal. Penal Code § 626.7(a). Similarly, we find no evidence of pretext in the fact that the DPL only refers to activities occurring since January 2015 while the School District's brief also references additional activities. Rather,

---

[3] Indeed, at oral argument, when asked "whether any of the occasions when [permission] wasn't given . . . [were] when she was asking about her disabled child," petitioners' counsel answered, "no, not with the disabled child." Oral Arg. Tr. 1:36.

4

that uncontested history provides useful context for the District's eventual decision to issue the DPL in March after previously refraining from doing so.[4]

4. We also reject Misty's claim for retaliation for the exercise of First Amendment rights. Jefferson Elementary is a non-public forum where regulations on speech are permissible so long as they are "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Flint v. Dennison*, 488 F.3d 816, 830–31 (9th Cir. 2007) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 46 (1983)). Requiring the Camfields to seek permission twenty-four hours prior to entering campus was a reasonable regulation unrelated to viewpoint discrimination, and the record contains no evidence that the restrictions were used to suppress expression, but merely to control disruption of the educational environment.

5. Even assuming that California Education Code § 51101 creates a private cause of action, the DPLs issued to Corey and Misty did not violate it. Section 51101 allows parents to enter campus "within a reasonable period of time following making the request." Twenty-four hours is "a reasonable period of time." The Camfields

---

[4]    Our dissenting colleague finds evidence of pretext in the "temporal proximity between the DPL's issuance" and "the conduct it provides as a basis for exclusion," as well as a "rising hostility to Camfield in response to her complaints." Dissent 1–2. But because Misty did not make these arguments in her opening brief, we decline to address them. *See Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 485 (9th Cir. 2010).

obtained permission and entered campus on numerous occasions after the DPLs were issued. The Camfields' proposed cause of action for negligently breaching the "duty of care [the School District] owed to parents, including [the Camfields], to assure that they are afforded appropriate access to the campus in order to exercise [their] rights" under Section 51101 is simply another way of stating the same claim.

6. The district court correctly dismissed the Camfields' Bane Act claim because they "fail[ed] to plead sufficient facts that Defendants' communications contained 'threats, intimidation or coercion.'" *See* Cal. Civ. Code § 52.1(b)–(c). The School District's communications to the Camfields prior to the DPL were not threats. Nor did those communications unreasonably interfere with the exercise of any constitutional or statutory rights.

7. The Camfields' claim that the defendants "unilaterally den[ied] them their statutory and constitutional rights without due process of law" fails for the reasons noted above and by the district court.

**AFFIRMED.**

*Camfield v. Bd. of Trustees of Redondo Beach Unified Sch. Dist.*, No. 17-56072

WARDLAW, Circuit Judge, dissenting in part:

I part ways with my colleagues on a narrow issue: Misty Camfield adduced sufficient evidence to survive summary judgment on her unlawful retaliation claims under the Americans with Disabilities Act (ADA) and Rehabilitation Act against the District. The District conceded that Camfield established a prima-facie case of retaliation, but offered several reasons for its adverse action, the Disruptive Parent Letter (DPL), that it asserts, and the majority accepts, were legitimate and nondiscriminatory. Unlike the majority, I conclude that Camfield provided specific and substantial evidence of pretext, *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003).

The contemporaneous reasons for issuing the DPL are stated clearly in it, and they relate exclusively to Camfield's advocacy on behalf of her disabled son. Yet, throughout this litigation the District has offered other, inconsistent justifications for Camfield's exclusion.[1] Moreover, the DPL purports to rely on sections of the California Penal Code that explicitly exclude applicability to parents or guardians of a pupil of the school. There is temporal proximity between the DPL's issuance on March 3, 2015 and the conduct it provides as a basis for exclusion dating from January 2015 (including two complaints Camfield made less

---

[1] Even the majority opinion relies on "undisputed facts" not set forth in the DPL itself to bolster the basis for Camfield's exclusion.

than a week before the DPL).  That school administrators exhibited rising hostility to Camfield in response to her complaints about her disabled child's education is apparently undisputed, and it is also clearly described in the DPL.  Each of these factors has been deemed evidence of pretext in our circuit, and thus a genuine dispute of material fact exists.  *See, e.g.*, *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005) (noting that a plaintiff may demonstrate pretext "by showing that the [defendant's] proffered explanation is . . . inconsistent or otherwise not believable"); *Stegall*, 350 F.3d at 1071 (holding hostility and temporal proximity are highly probative of pretext).