Filed 7/22/24  Khalil v. State of California Dept. of State Hospitals CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| VICTOR KHALIL, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> THE STATE OF CALIFORNIA DEPARTMENT OF STATE HOSPITALS, <br><br> Defendant and Respondent. | F085049 <br><br> (Super. Ct. No. 20CECG02085) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Kristi C. Kapetan, Judge.

Brent S. Buchsbaum for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Jerry J. Deschler, Jinnifer D. Pitcher, and Michael P. Purcell, Deputy Attorneys General, for Defendant and Respondent.

-ooOoo-

This is an employment dispute between appellant Dr. Victor Khalil (Khalil) and his former employer respondent the State of California Department of State Hospitals (DSH). DSH obtained summary judgment on the claims alleged against it, including a claim for retaliation under the Fair Employment and Housing Act (FEHA), Government Code section 12940, subdivision (h). In this appeal, Khalil contends that the trial court erred by: (1) concluding that there was no admissible direct evidence of retaliation; (2) concluding that there was insufficient circumstantial evidence of retaliation; and (3) comprehensively granting all of DSH's hearsay objections. We reverse and remand.

## PROCEDURAL BACKGROUND

On March 24, 2020, Khalil filed his complaint against DSH.

On March 18, 2022, DSH filed a motion for summary judgment on all claims. In part, DSH argued that Khalil could not establish a prima facie case of retaliation or show that its nonretaliatory reason for taking adverse action against him was pretextual. Hearing on the motion was set for August 3, 2022.

On July 20, 2022, Khalil filed his opposition to DSH's motion for summary judgment, which included an opposition declaration.

On July 29, 2022, DSH filed a reply to Khalil's opposition, as well as objections to Khalil's opposition declaration.

On August 2, 2022, Khalil filed a declaration in response to DSH's objections.

On August 3, 2022, the trial court adopted a tentative ruling granting DSH's motion for summary judgment.[1] The tentative ruling explained in part that although Khalil had filed a declaration that described how two DSH executives had "openly discuss[ed] wanting to retaliate against [Khalil] for having made numerous complaints

---

[1] In his reply brief, Khalil points out that the tentative ruling indicates it was issued and adopted on August 3, 2022, in possible contravention of California Rules of Court, rule 3.1308(a)(1). However, because the result of this appeal will not change, we decline to address whether the trial court complied with rule 3.1308(a)(1).

2.

about discrimination and mistreatment," DSH's objection of hearsay was correct and therefore sustained. The tentative ruling also sustained all DSH's hearsay objections to fifteen other aspects of Khalil's declaration, with one limited exception for part of an exhibit. A minute order issued the same day that adopted the tentative ruling without change.

On August 11, 2022, judgment was entered in favor of DSH.

On October 14, 2022, Khalil appealed the order on DSH's motion for summary judgment and corresponding judgment of the court.

## FACTUAL BACKGROUND

Beginning in 2014, Khalil was the chief dentist at Coalinga State Hospital (the Hospital) and supervised other dentists in the dental department. As a supervisor, Khalil had concerns about the competency of another dentist, Dr. Stanford Lai (Lai). Khalil raised issues concerning Lai to the medical director Dr. Robert Withrow (Withrow) and the chief physician and surgeon Dr. Jonathan Hamrick (Hamrick), but they did not address the issue. Eventually, in January 2018, Khalil filed a request for Lai's immediate removal with Withrow and executive director Brandon Price (Price). Lai was not removed, but the Hospital's administration changed how Khalil was scrutinized by changing his direct supervisor from Withrow to Hamrick.

Sometime in early February 2018, Lai sent an e-mail to Price in which he alleged that Khalil was creating a hostile work environment, engaging in unsafe work practices, and interacting with others in an unprofessional and disrespectful manner. Lai's claims were forwarded for investigation to DSH's Office of Special Investigations (OSI) in Sacramento. OSI investigators are to arrive at their own conclusions, and the outcome of investigations is not controlled by any Hospital employee.

On February 9, 2018, Khalil informed Hamrick and Withrow that he believed they were subjecting him to bullying and harassment. The same day, OSI responded to an e-

3.

mail from Withrow about opening an investigation into Lai's e-mail complaint against Khalil.

On February 13, 2018, Khalil complained to the acting executive director of the Hospital about perceived harassment and discrimination by Withrow and Hamrick. The acting director sent a detailed e-mail to Price and statewide DSH officials. Also, on February 13, 2018, OSI opened an investigation into Lai's complaints against Khalil.

On February 14, 2018, the Hospital's Equal Employment Opportunity (EEO) officer reached out to Khalil about his complaints of discrimination and harassment. Khalil met with the EEO officer and discussed his complaints, including the involvement of Price.

On February 15, 2018, Khalil again met with the EEO officer and shared that he intended to file a complaint of harassment and retaliation against DSH with the California Department of Fair Employment and Housing (DFEH). Khalil shared a 30-page narrative that included claims of harassment and retaliation by Hamrick, Withrow, and Price. The EEO officer reviewed Khalil's narrative and stated that she would inform Price and DSH headquarters about the complaint.

On February 17, 2018, Khalil filed a complaint with DFEH against DSH. The DFEH complaint alleged harassment, discrimination, and retaliation against Khalil by Hamrick, Withrow, and Price ranging from February 22, 2017, to February 13, 2018. The DFEH complaint included examples of complaints made by Khalil to Price without action being taken by Price.

On February 20, 2018, DSH advised Khalil in writing that he was the subject of an administrative investigation.

On April 12, 2018, Khalil reported to Price and two statewide DSH officials that he believed Withrow was retaliating and discriminating against him. Despite DSH EEO policy, Price did not report Khalil's complaints to the Hospital EEO office.

4.

In January and February 2019, Khalil met and spoke with the Hospital EEO officer. Khalil discussed the possible sexual harassment of a female contract dentist, Dr. Morris, by Lai. Khalil forwarded copies of Morris's complaint against Lai to the Hospital EEO officer, Withrow, and Price. After receiving Morris's complaint, Withrow claimed Morris had indicated to him that Khalil had pressured her to complain against Lai. Price had the Hospital's internal investigators speak with Morris about Khalil pressuring her. Price later referred the matter to the Office of Protective Services (OPS) in Sacramento.

On June 7, 2019, Khalil's counsel sent a letter to Price, Withrow, and two statewide DSH officials that explained Khalil was the subject of ongoing retaliation because he engaged in a number of protected activities, including relaying Morris's harassment claims to the Hospital administration. The letter also indicated that Khalil had filed a complaint with the DFEH and obtained a right to sue letter.

Sometime prior to August 1, 2019, OSI issued a 59-page report regarding Lai's allegations against Khalil. The report concluded Khalil had violated two administrative directives, one regarding workplace safety and the other regarding respectful work environments and discourteous treatment. Price was aware that the OSI report also noted Lai had told investigators that Khalil "was an Egyptian and [Khalil's] culture was very different than there. Dr. Lai stated the Egyptians used to be slaves, but now [Khalil] was a dentist, so [Khalil] was in the upper class of people there. Dr. Lai stated Dr. Khalil was nothing special here in America, just another worker, especially when you work for the State." Although Price believed that Lai's statements were improper and that some follow up training for Lai was appropriate, Price took no actions to address Lai's statements.

On August 1, 2019, Price issued an adverse action against Khalil by reducing his pay by 10 percent for six months. Price declared that he was the sole decisionmaker for the pay reduction and that he did so because OSI had issued a negative report regarding

Lai's complaints. At the time the pay reduction was imposed, Khalil had made internal complaints at the Hospital, external complaints to DSH leadership in Sacramento, and a complaint with DFEH that Price had been violating his civil rights. Further, prior to the pay reduction, Khalil had uniformly received performance reviews of "meets expectations" or "exceeds expectations." Despite these reviews, it does not appear that Price considered a lower form of progressive discipline. The pay reduction paved the way for additional future progressive discipline, which appears to have been termination.

## DISCUSSION

### I.      Parties' Arguments

Khalil argues in part that there is direct evidence of retaliatory animus. In opposition to summary judgment and in response to a hearsay objection, Khalil argues that he submitted declarations that described a conversation he had with Hamrick. In those declarations, Khalil explained that Hamrick had told him about conversations with Price and Withrow in which Price and Withrow said that they wanted Khalil out of the Hospital and were going to retaliate against him for filing complaints of discrimination and mistreatment. Relying heavily on *Colarossi v. Coty US Inc.* (2002) 97 Cal.App.4th 1142 (*Colarossi*), Khalil argues that the trial court incorrectly concluded that these statements were hearsay because the statements of Hamrick and Price are admissible among other ways as admissions of a party opponent. Khalil argues that the court should have considered this direct evidence and denied summary judgment.

DSH contends in part that there was no direct evidence of retaliation that was properly before the trial court. DSH argues that Khalil procedurally defaulted on his ability to challenge the court's hearsay ruling because he did not explicitly raise any exceptions to the court. DSH also argues that, to the extent his arguments are not waived, Khalil did not lay a proper foundation for finding that the hearsay is admissible as admissions. DSH further argues that the statements in Khalil's declaration are not clearly direct evidence of retaliatory animus and that *Colarossi* is distinguishable. Finally, DSH

contends exclusion of the hearsay statements can alternatively be upheld because Khalil's declaration contradicted his deposition testimony.

We agree with Khalil that the trial court erred by excluding paragraph 34 (Paragraph 34) of Khalil's declaration in support of his opposition to the motion for summary judgment/summary adjudication.

## II. Additional Background

### A. *Summary Judgment Declarations*

In the course of the summary judgment proceedings, the parties submitted declarations. In relation to the issues in this appeal, the declaration of Price in support of summary judgment, Khalil's declaration in opposition to summary judgment (Khalil's Opposition Declaration), and Khalil's declaration in response to evidentiary objections (Khalil's Responding Declaration) contain the most relevant information.

#### 1. Price's Declaration

Price declared that that he is the executive director of Department of State Hospital in Coalinga and has held that position since 2014. Price explained that he oversees the Hospital's entire operations, including overseeing the employee relations office, which assists supervisors with issuing adverse actions to their subordinates. At the Hospital, the chief dentist reports to either the chief physician and surgeon or the medical director, but the chief physician and surgeon reports to the medical director. The medical director reports to the executive director.

In February 2018, Price received an e-mail from Lai that accused Khalil of creating a hostile work environment, engaging in unsafe work practices, and acting unprofessionally and disrespectfully. The OSI, who reports to the Hospital's chief of police, opened an investigation into Lai's allegations against Khalil.

Price declared that OSI concluded Khalil had behaved unprofessionally and discourteously to staff and engaged in unsafe work practices. Price explained that, as a result of OSI's report, he decided to issue an adverse action against Khalil and reduce his

7.

pay by 10 percent for six months. Price declared that he was the sole decisionmaker with respect to the pay reduction and that Khalil's prior "EEO allegations" had nothing to do with this decision.

Finally, Price declared that in March 2019, Withrow informed him that Khalil was pressuring Morris to file complaints against Lai. Price instructed a Hospital safety officer to investigate and later referred the matter to OPS. Price declared that Khalil's prior EEO allegations had nothing to do with his decision to request an OPS investigation against Khalil.

### 2. Khalil's Opposition Declaration

Khalil's opposition declaration detailed a number of personnel matters, including reports of improper treatment that he was experiencing. In relevant part, Khalil described in Paragraph 34 a conversation he had with Hamrick:

> "[M]y immediate supervisor, [Hamrick], told me on multiple occasions, including within 2 months of the August 1, 2019 Adverse Action, that I was working in a hostile work environment and should seriously consider quitting, since nothing was going to be done. He further advised me that based on recent discussions he had with [Price] and [Withrow], the investigations I was being subjected to were in retaliation for the discrimination and other complaints of mistreatment that I had filed. [Hamrick] advised me that in these discussions, [Price] and [Withrow] stated that they wanted me out of [the Hospital] and were looking for reasons to get that accomplished. [Hamrick] explained that quitting was preferable to allowing that to happen."

Based on this paragraph, and as part of his opposition to summary judgment, Khalil submitted the proposed fact that, within a few months of the pay reduction, "Hamrick advised [Khalil] that he [Hamrick] had been involved in discussions with [Price] and [Withrow] where they had openly discussed wanting to retaliate against [Khalil] due to his numerous complaints about discrimination and mistreatment."

### 3. Khalil's Responding Declaration

DSH objected that Paragraph 34 was speculative and without foundation, argumentative and misleading, contrary to prior deposition testimony, and "(Double) hearsay without an exception."

Khalil's Responding Declaration focused on Paragraph 34. In paragraph 2 of the Responding Declaration (Paragraph 2), Khalil explained what he intended to convey in Paragraph 34: "I indicated that my immediate supervisor, [Hamrick], advised me that [Price] stated that he was going to retaliate against me due to my complaints of discrimination and mistreatment." Khalil continued that Hamrick supervised him and that he and Hamrick worked closely together. Khalil then further described Hamrick's duties. At the time that Hamrick made the statements described in Paragraph 34, he was part of the Hospital administration and was the third highest administrator, just below Withrow and Price. Hamrick was responsible for: supervising all physicians at the Hospital; addressing discrimination and retaliation issues and providing relevant information thereon to the EEO office; and participating in meetings regarding personnel issues, including determining what adverse actions would be taken against an employee. Khalil declared that Hamrick participated in the dispositional meeting relating to the 10% pay reduction.

### 4. Khalil's Summary Judgment Opposition

Khalil's opposition significantly relied on Paragraph 34 of his declaration as constituting direct evidence of retaliation. Khalil also noted that "Executor Director Price" was the decisionmaker for the pay reduction. At one point, after describing Paragraph 34, Khalil argued: "These statements from Dr. Hamrick, which are admissions of a party-opponent, are all that is needed to establish the existences [*sic*] of a material fact for plaintiff's retaliation claim."

**B.** *Legal Standards*

**1.    Summary Judgment**

Appellate courts employ a de novo standard of review to a trial court's decision granting summary judgment.  (*California Medical Assn. v. Aetna Health of California Inc.* (2023) 14 Cal.5th 1075, 1087; *Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.)  In conducting a de novo review, appellate courts identify the issues framed by the pleadings, determine whether the moving party met its burden of establishing facts that justify summary judgment, and, if so, determine whether the moving party has demonstrated the existence of a triable issue of material fact.  (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 29 (*Zamora*).)  All of the evidence set forth in the moving and opposition papers, except that to which objections were made and properly sustained by the trial court, is to be considered.  (*640 Octavia, LLC v. Pieper* (2023) 93 Cal.App.5th 1181, 1189; *Doe v. Good Samaritan Hospital* (2018) 23 Cal.App.5th 653, 662.)  The evidence is viewed in the light most favorable to the nonmoving party, the nonmoving party's evidence is accepted as true, and all reasonable inferences are made in the nonmoving party's favor.  (See *California Medical Assn.*, at p. 1087; *Wong v. Stillwater Ins. Co.* (2023) 92 Cal.App.5th 1297, 1315.)  Further, the nonmoving party's evidence is liberally construed, and all doubts are resolved in the nonmoving party's favor.  (*Gonzalez v. Mathis*, at p. 39; *Doe*, at p. 662.)  "Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' "  (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Borden v. Stiles* (2023) 92 Cal.App.5th 337, 345.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted; *Atalla v. Rite Aid Corp.* (2023) 89 Cal.App.5th 294, 308.)

### 2. FEHA Retaliation

FEHA prohibits an employer from discriminating/retaliating against a person "because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]." (§ 12940, subd. (h); *Zamora*, *supra*, 71 Cal.App.5th at p. 31.)  The elements of a FEHA retaliation cause of action are:  (1) the plaintiff engaged in FEHA protected activity; (2) retaliatory animus or intent by the employer against the plaintiff for engaging in protected activity; (3) an adverse employment action by the employer; (4) a causal link between the retaliatory animus and the adverse employment action; (5) damages; and (6) causation.  (See *Brown v. Los Angeles Unified School Dist.* (2021) 60 Cal.App.5th 1092, 1105.)

A plaintiff's retaliation case may be based on direct evidence.  (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 591; *Morgan v. Regents of the University of California* (2000) 88 Cal.App.4th 52, 67 (*Morgan*).)  Direct evidence is evidence that proves a fact without inference or presumption.  (*Zamora*, *supra*, 71 Cal.App.5th at p. 35; *Morgan*, at p. 67.)  "Direct evidence includes comments that demonstrate discriminatory animus and a causal relationship between those comments and the adverse employment action."  (*Zamora*, at p. 35.)  " ' "Direct evidence of retaliation may consist of remarks made by decisionmakers displaying a retaliatory motive." ' "  (*Scheer v. Regents of University of California* (2022) 76 Cal.App.5th 904, 917 (quoting *Colarossi*, *supra*, 97 Cal.App.4th at p. 1153); see also *Zamora*, at p. 35.)  If a plaintiff offers direct evidence of retaliatory animus, generally the employer must prove that the plaintiff would have suffered the same adverse employment action irrespective of the plaintiff's protected activity.  (See *Zamora*, at p. 34; *Morgan*, at pp. 67–68.)

### 3. Hearsay

"Hearsay is an out-of-court statement offered to prove the truth of its content." (*People v. Valencia* (2021) 11 Cal.5th 818, 831, fn. omitted; *Cameron v. Las Orchidias*

11.

*Properties, LLC* (2022) 82 Cal.App.5th 481, 511; see also Evid. Code, § 1200.[2])
"Hearsay is inadmissible unless it falls under [a statutory] exception." (*People v. Ng*
(2022) 13 Cal.5th 448, 539; *Bowser v. Ford Motor Co.* (2022) 78 Cal.App.5th 587, 610
(*Bowser*).) Multiple hearsay, or double hearsay, is "admissible for its truth only if each
hearsay layer separately meets the requirements of a hearsay exception." (*People v. Arias*
(1996) 13 Cal.4th 92, 149; *Caliber Paving Co., Inc. v. Rexford Industrial Realty &
Management, Inc.* (2020) 54 Cal.App.5th 175, 189 (*Caliber Paving*); see also § 1201.)
" 'The proponent of hearsay has to alert the court to the exception relied upon and has the
burden of laying the proper foundation.' " (*People v. Turner* (2020) 10 Cal.5th 786, 822.)

Two hearsay exceptions involve admissions of a party. (§§ 1220, 1222; *Morgan*,
*supra*, 88 Cal.App.4th at p. 70.) Under the admissions of a party opponent exception, the
statements of an opposing party are admissible. (§ 1220; *People v. Orey* (2021)
63 Cal.App.5th 529, 553.) As the name of the exception indicates, to be admissible the
statements must be made by a declarant who is a party in the action. (*Caliber Paving*,
*supra*, 54 Cal.App.5th at p. 189.) Under the authorized admission exception, the
statements of a person who is authorized by a party to make such statements are
admissible. (See § 1222; *Doe v. SoftwareONE Inc.* (2022) 85 Cal.App.5th 98, 109
(*SoftwareONE*).) The authorized admissions exception includes statements by an agent
that are made in connection with the performance of an act that is within the scope of the
agent's authority; such statements are in legal effect the admissions/statements of the
principal. (See *Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th
1059, 1077; *SoftwareONE*, at p. 109; *Bowser*, *supra*, 78 Cal.App.5th at p. 612.) The
proponent of an authorized admission must submit sufficient evidence to show that a
declarant is authorized to speak on behalf of the party against whom the statement is

---

[2] All further undesignated statutory references are to the Evidence Code unless
otherwise noted.

offered.  (*Bowser*, at p. 613.)  With respect to the statements of high ranking organizational agents, the authorized admission exception may apply based on job title alone.  (*SoftwareONE*, at p. 109; *Bowser*, at p. 613).  With respect to the statements of lower ranking organizational agents, the authorized admission exception may apply based on the agent's actual duties and responsibilities.  (*Bowser*, at p. 613.)

**C.      *Analysis***

**1.      Forfeiture**

There is no dispute that Paragraph 34 contains "double hearsay."[3]  Paragraph 34 is Khalil describing statements to him by Hamrick, who in turn was describing statements made to him (Hamrick) by Price.  Therefore, to be admissible, there must be a hearsay exception for both the purported statements of Hamrick and the purported statements of Price.  It was Khalil's burden to identify exceptions and lay the proper foundations for those exceptions before the trial court.  (*People v. Turner*, *supra*, 10 Cal.5th at p. 822.)

---

[3] The trial court did not discuss Paragraph 2 of Khalil's declaration in support of his opposition to the motion for summary judgment/adjudication (Paragraph 2).  Khalil's opening brief cited to Paragraph 34 and Paragraph 2 and explained why the purported statements of Price and Hamrick were not admissible.  However, Khalil's reply argued that because no objection was made to Paragraph 2, the entirety of Paragraph 2 could be considered.  We are not persuaded by Khalil's reply argument.  The double hearsay aspect of Paragraph 34 applies equally to Paragraph 2 because Paragraph 2 describes Paragraph 34, including the statements of Price and Hamrick.  Indeed, when describing this case as a direct evidence case and addressing the hearsay exception for admissions, Khalil's briefing made no distinction between Paragraph 34 and Paragraph 2.  Further, Khalil's Responding Declaration was filed the day before the August 3 hearing.  The only realistic opportunity that DSH had to object to Paragraph 2 was the August 3 hearing, which was vacated.  Given the procedural timeframe involved, the nature of Khalil's opening argument, and the trial court expressly sustaining the hearsay objection to Paragraph 34 but not mentioning Paragraph 2 in its ruling, we believe that the court's exclusion on hearsay grounds would apply equally to Paragraph 2.  Additionally, since the trial court's ruling expressly sustained the hearsay objection to Paragraph 34, we will largely focus our discussion on Paragraph 34 as well.  However, because of the similarity and interrelatedness of Paragraph 34 and Paragraph 2, our analysis of Paragraph 34 applies equally to Paragraph 2 in all material aspects.

DSH argues that Khalil did not identify a hearsay exception to the trial court and thus, he has forfeited the evidentiary issue. We do not agree with DSH.

Prior to any evidentiary objections being made, Khalil's opposition discussed Paragraph 34. Khalil characterized Price as the "decision-maker" and stated that Hamrick's statements were admissions of a party opponent. The opposition named no other hearsay exceptions. Khalil's Responding Declaration, which was the only written response by Khalil to the objections, did not expressly identify any other hearsay exceptions. However, the declaration described Price as the decisionmaker and provided significant details regarding Hamrick's job title and corresponding duties.

As discussed above, sections 1220 and 1222 provide hearsay exceptions for the "admissions of a party." (*Morgan*, *supra*, 70 Cal.App.4th at p. 70.) The difference between the exceptions is simply the form of the opponent's admission. Section 1220 provides for the admission of a party's actual statements, i.e. an admission of a party opponent, while section 1222 treats statements made by an authorized agent as the legal equivalent of a party opponent's own statements, i.e. an authorized admission. Generally, the statements made by an entity are made through an employee or officer of the entity, which implicates section 1222 rather than section 1220. (*Bowser*, *supra*, 78 Cal.App.5th at p. 611.) Nevertheless, because they address similar types of hearsay statements that are made by or imputed to an opponent, courts and litigants have sometimes simply referred to sections 1220 and/or 1222 as providing an exception for "admissions" (e.g. *Cheal v. El Camino Hospital* (2014) 223 Cal.App.4th 736, 756 [litigant described § 1222 as involving " 'admissions' or 'party admissions' "]; *Morgan*, *supra*, 88 Cal.App.4th at p. 70 [citing both sections as providing an exception for "admissions of a party"]), or simply cited the two provisions in tandem with little distinction being made between the two. (E.g., *Jane IL Doe v. Brightstar Residential, Inc.* (2022) 76 Cal.App.5th 171, 178–179; *People v. Casa Blanca Convalescent Homes* (1984) 159 Cal.App.3d 509, 533; *Los Angeles County Flood Control Dist. v. Mindlin* (1980) 106 Cal.App.3d 698, 713.) One

14.

court has also referred to section 1222 as making the "vicarious statements by a party opponent" admissible. (*Browne v. Turner Construction Co.* (2005) 127 Cal.App.4th 1334, 1348, fn. 7.)

Additionally, we are aware of at least two cases that have found the statements of an agent to be admissible as statements of a party opponent under section 1220, even though the agent was not a named party to the action. (*Caliber Paving*, *supra*, 54 Cal.App.5th at pp. 188–189; *Colarossi*, *supra*, 97 Cal.App.4th at p. 1150.) In *Caliber Paving*, statements made by a defendant's representative to a contractor that the defendant wanted a subcontractor off a project was considered an admission of a party under section 1220, even though the representative was not a named party. (*Caliber Paving*, *supra*, 54 Cal.App.5th at pp. 188–189.) Similarly, *Colarossi* found that a defendant's director of marketing had so substantially participated in the process leading to the plaintiff's retaliatory termination that the director's statements were those of the defendant under section 1220, even though the director was not named as a party in the lawsuit. (*Colarossi*, *supra*, 97 Cal.App.4th at p. 1150.)

From the above, neither litigants nor courts necessarily clearly differentiate or keep separate admissions under section 1220 from admissions under section 1222. *Bowser* and *SoftwareONE* indicate that when an entity defendant is involved, the statements of an officer or an employee should be analyzed under section 1222. However, *Caliber Paving* and *Colarossi* indicate that statements of a high ranking officer or manager who sufficiently participates in retaliation/discrimination can be deemed the statements of the corporate/entity party itself under section 1220. In other words, case law suggests that it may be possible for the statements of decisionmakers or those involved in a decision-making process to be admissible under either section 1220 or section 1222 as admissions. (Cf. *Colarossi*, *supra*, 97 Cal.App.4th at p. 1150 [holding that nonparty director's statements were admissible under section 1220]; *Morgan*, *supra*,

88 Cal.App.4th at p. 70 [indicating that statements of decisionmakers are admissible under section 1222].)

Considering how case law describes and treats admissions under sections 1220 and 1222, we conclude in this case that the characterization of Price as the decisionmaker, the extensive description of Hamrick's duties as the chief physician and surgeon (which is clearly consistent with the foundational requirements for § 1222), and the express identification of an admission by a party opponent are collectively sufficient for the trial court and DSH to have been adequately put on notice that the admissions exceptions of sections 1220 and 1222 were implicated and at issue. Therefore, we do not find forfeiture with respect to these hearsay exceptions.

### 2.        Contradictory Declaration

DSH argues that Khalil's Opposition and Responding Declarations contradict his earlier deposition testimony. DSH contends that Khalil was specifically asked to identify all the reasons he believed he was retaliated against, and he did not disclose the conversation with Hamrick. DSH relies on three particular excerpts from Khalil's deposition testimony to support its argument. Even though the trial court did not exclude Paragraph 34 because it was a contradictory/sham declaration, we may consider this alternative basis for upholding the court's evidentiary ruling. (*Philip Chang & Sons Assocs. v. La Casa Novato* (1986) 177 Cal.App.3d 159, 173.) Nevertheless, we cannot conclude that Paragraph 34 is so contradictory that it cannot create a triable issue of fact.

Under what is sometimes referred to as the "sham declaration doctrine," a party cannot create a triable issue of fact by simply submitting a declaration that contradicts a clear and unequivocal admission in prior discovery. (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21; *Tiffany Builders, LLC v. Delrahim* (2023) 97 Cal.App.5th 536, 547 (*Tiffany Builders*); *Harris v. Thomas Dee Engineering Co., Inc.* (2021) 68 Cal.App.5th 594, 603.) Courts are to consider the entirety of the record in determining whether to disregard a contradictory declaration. (*Tiffany Builders*, at

16.

p. 547; *Harris*, at p. 605.)  Courts must examine "the directness of the asserted contradiction and the plausibility of harmonizing explanations."  (*Tiffany Builders*, at p. 547.)

Here, some of the excerpts ask about the reasons why Khalil believed he was retaliated against due to his support for Morris's complaints against Lai and his prior lawsuit against the California Department of Corrections and Rehabilitation (CDCR) in 2008.  However, Paragraph 34 is not tied to any particular protected activity by Khalil.  Instead, it references complaints or protected activity in general.  Because Paragraph 34 is not expressly tied to Khalil's support of Morris's complaint or his prior CDCR suit, Paragraph 34 is not so contradictory that it cannot create a triable issue of fact.  (See *Tiffany Builders*, *supra*, 96 Cal.App.5th at p. 547.)

Other excerpts ask a variation on the question of what Khalil's reasons were for believing that the reduction in pay was done in retaliation for engaging in protected activity.  However, Khalil's response to these questions did not identify any specific "legal reason" why he believed that there was retaliatory animus.  Instead, Khalil's answers identified different protected activities that he engaged in.  In response to the question of whether Khalil's belief that the reduction in pay was in retaliation for reasons that were (apparently) previously discussed in the deposition or whether there were additional reasons to believe that the reduction in pay was retaliatory, Khalil responded by identifying several complaints that he had made regarding discrimination and retaliation and by identifying the prior lawsuit against CDCR.  Similarly, after being asked if there were any other reasons that had not yet been discussed for why he believed that the reduction in pay was retaliatory, Khalil responded by identifying his involvement with Morris and her complaints of harassment against Lai.  By identifying protected activity as the reasons for retaliation, it is not clear that Khalil and DSH's attorney were interpreting "reasons" in the same sense.  Instead of explaining the legal and factual bases for finding retaliatory animus, which appears to be how DSH's counsel intended the

17.

questions, Khalil's answers suggest that the protected activities identified were the reasons for retaliation. That is, Khalil is responding he was retaliated against precisely because he engaged in those activities, i.e., the activities are the *reasons* for the reduction in pay. From a "lay" or nonlegal perspective, such an interpretation of DSH's questions is reasonable. Accordingly, given the nature of the responses actually given which merely identified protected activity, we cannot conclude that these particular deposition excerpts demonstrate a sufficient contradiction so as to preclude Paragraph 34 from creating a triable issue of fact.

Finally, in the last deposition excerpt cited by DSH, Khalil was asked: "Any other reasons that you believe that the [reduction in pay] was discriminatory or retaliatory that we haven't already discussed?" Khalil responded, "That's all I can think of *as of now*." (Italics added.) This last excerpt is a generalized catch-all question that is attempting to understand and discuss the reasons for Khalil's belief that the reduction in pay was retaliatory. However, in addition to the fact that Khalil's prior responses to similar questions suggest that Khalil and DSH's counsel were not interpreting "reasons" in the same manner (as discussed above), Khalil's response was not clear and unequivocal. The response was expressly tied to his memory at the time he was answering the question. The obvious consistent response to any possible contradiction between Paragraph 34 and this excerpt is that Khalil did not remember Hamrick's statement *at the time* he answered the question (three hundred pages into his deposition). Therefore, this excerpt is not so clear and unequivocal that it renders Paragraph 34 fatally contradictory. (*D'Amico v. Board of Medical Examiners*, *supra*, 11 Cal.3d at p. 21; *Tiffany Builders*, *supra*, 97 Cal.App.5th at p. 547.)

In sum, we cannot conclude that the record demonstrates as a matter of law that Paragraph 34 is so contradictory that it should be considered a sham.

### 3. Foundation for a Hearsay Exception

There is no dispute that Paragraph 34 contains two layers of hearsay, the statements by Price and the statements by Hamrick. Again, the hearsay exceptions implicated are sections 1220 and 1222 for admissions of a party. (See *SoftwareONE*, *supra*, 85 Cal.App.5th at p. 109; *Bowser*, *supra*, 78 Cal.App.5th at pp. 612–613; *Caliber Paving*, *supra*, 54 Cal.App.5th at pp. 188–189; *Colarossi*, *supra*, 97 Cal.App.4th at p. 1150.)

With respect to Price, Khalil's opposition to summary judgment and Responding Declaration identified Price as the decisionmaker behind the reduction in pay and as the executive director of the Hospital. Price's own declarations confirm both that he was the decisionmaker behind the reduction in pay and that he was the executive director at the Hospital. Moreover, Price's opposition declaration establishes that he is the top administrator at the Hospital and that he is ultimately responsible for the Hospital's proper functioning. As the decisionmaker behind the reduction in pay, and as the administrator who is in charge of the Hospital, Price's statements are admissible as admissions under section 1222. (§ 1222; *Bowser*, *supra*, 78 Cal.App.5th at pp. 612–613; cf. *Morgan*, *supra*, 88 Cal.App.4th at p. 70 [recognizing that statements by an employee of the defendant were not admissible admissions in part because the employee was not the decisionmaker].) Furthermore, under *Colarossi*, Price's involvement in the pay reduction and his rank as the top administrator at the Hospital are sufficient to make his statements admissible as admissions under section 1220. (*Colarossi*, *supra*, 97 Cal.App.4th at p. 1150; see also *Caliber Paving*, *supra*, 54 Cal.App.5th at pp. 188–189.)

With respect to Hamrick, Khalil's Responding Declaration establishes that Hamrick was Khalil's immediate supervisor and supervised all physicians in the Hospital. Hamrick was the third highest administrator in the Hospital, just below Withrow and Price. Khalil's declaration establishes that he worked with Hamrick with respect to

imposing adverse employment actions. In fact, Khalil's declaration shows that Hamrick was part of the disposition meeting relating to the reduction in pay. Hamrick was responsible for addressing discrimination and retaliation issues that arose under his department and forwarding information to the Hospital's EEO office. We are aware of no part of the record that contradicts this description of Hamrick's duties as chief physician and surgeon.[4] Therefore, Khalil's declaration shows Hamrick is a high level Hospital administrator who was responsible for addressing retaliation claims for those under his supervision and for participating in adverse employment actions for those under his supervision, which included Khalil. Khalil's declaration demonstrates that Hamrick's title and job responsibilities, particularly his supervision of Khalil, are such that Hamrick was authorized for purposes of section 1222 to speak about Khalil's complaints and any possible discipline against Khalil. (Cf. *SoftwareONE*, *supra*, 85 Cal.App.5th at p. 109 [explaining that a manager was not authorized to speak for the defendant where the manager's job duties were not related to the plaintiff's job duties or job performance].) Therefore, the statements of Hamrick as described in Paragraph 34 are admissions

---

**4** In a footnote, DSH argues that Khalil's Responding Declaration in which he described Hamrick as a high-ranking official should be disregarded because it is contrary to Khalil's deposition testimony, which described Hamrick as a mere rank-and-file staff physician. We will not view Hamrick as a rank-and-file physician at the Hospital. First, Khalil's deposition testimony acknowledged that Hamrick was the chief physician and surgeon, but Khalil simply believed that Hamrick was a rank-and-file physician *at the time* he began supervising Khalil in September or October 2018. In contrast, Paragraph 34 dealt with a time period around August 2019. Therefore, the obvious explanation for any contradiction is that Khalil was describing what he believed (either correctly or incorrectly) to be Hamrick's job title at different points in time. (*Tiffany Builders*, *supra*, 97 Cal.App.5th at p. 547.) Second, in opposition to summary judgment, Price declared that Hamrick became the chief physician and surgeon around January 2018. Indeed, DSH's brief in this appeal contends that Hamrick was the chief physician and surgeon at the relevant times. Price also confirmed that the chief physician and surgeon is a high ranking official as he reports to the medical director, and the medical director reports to the executive director. Therefore, we cannot conclude any party asserts that, around the time of the August 2019 pay reduction, Hamrick was simply a rank-and-file physician.

through section 1222.  (§ 1222; *Bowser*, *supra*, 78 Cal.App.5th at pp. 612–613; cf. *SoftwareONE*, *supra*, 85 Cal.App.5th at p. 109; *Morgan*, *supra*, 88 Cal.App.4th at p. 70.) Furthermore, under the rationale of *Colarossi*, Hamrick's supervision of Khalil, participation in the dispositional meeting regarding the pay reduction, responsibility to address retaliation and harassment, and his position as the third highest administrator at the Hospital (just below Withrow and Price) are sufficient to make his statements admissible through section 1220.  (*Colarossi*, *supra*, 97 Cal.App.4th at p. 1150; see also *Caliber Paving*, *supra*, 54 Cal.App.5th at pp. 188–189.)

We recognize that there is a split of authority regarding the appropriate standard to review evidentiary rulings on summary judgment.  Some courts apply a de novo standard when the rulings are based solely on the papers, (e.g. *Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1451), while other courts apply an abuse of discretion standard. (E.g., *SoftwareONE*, *supra*, 85 Cal.App.5th at pp. 103–104.)  We need not decide which standard is appropriate because the result will not change in this case.  The evidence regarding job titles and job duties of both Price and Hamrick are undisputed, and that undisputed evidence meets the foundational requirements for admissions under section 1220 (per *Caliber Paving* and *Colarossi*) and section 1222 (per *SoftwareONE* and *Bowser*).  Therefore, under either standard of review, the trial court erred in excluding Paragraph 34 as inadmissible hearsay.  (Cf. *SoftwareONE*, at p. 109 [explaining that if there is no evidence supporting the trial court's finding, then there has been an abuse of discretion].)

### 4.    Consideration of Excluded Evidence

"[A]n erroneous evidentiary ruling requires reversal only if ' "there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error." ' "  (*D.Z. v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 210, 231.)

In this case, the exclusion of Paragraph 34 and apparent exclusion of Paragraph 2 were prejudicial. Paragraph 34 and Paragraph 2 recount statements by Price that show he was looking for a way to get rid of Khalil *and* was going to retaliate against Khalil because of Khalil's complaints of discrimination and retaliation. The pay reduction fits Price's purported statements since the pay reduction was both a method of retaliation and a step in the disciplinary process that eventually led to Khalil's termination, i.e., getting rid of Khalil. Moreover, Hamrick informed Khalil of these statements relatively close in time (within two months) of the August 1 pay reduction. The purported statements of Price as relayed to Khalil by Hamrick reflect a retaliatory animus and place the intent of Price, the ultimate decisionmaker behind the pay reduction, at issue. (See *Scheer v. Regents of University of California*, *supra*, 76 Cal.App.5th at p. 917 [recognizing that the remarks of the decision-maker may constitute direct evidence of retaliatory animus]; cf. *Morgan*, *supra*, 88 Cal.App.4th at p. 70.) Viewing the evidence in the light most favorable to Khalil as the nonmoving party, a jury could view Price's purported statements as demonstrating that he reduced Khalil's pay, not because OSI found improper conduct by Khalil, but because he intended to retaliate against Khalil. Therefore, Paragraph 34 and Paragraph 2 constitute sufficient direct evidence of retaliatory animus that summary judgment on Khalil's retaliation claim should have been denied. (*Zamora*, *supra*, 71 Cal.App.5th at p. 35 [recognizing that "very little" direct evidence of a retaliatory motive is needed to defeat summary judgment]; see also *Dominguez-Curry v. Nevada Transp. Dept.* (9th Cir. 2005) 424 F.3d 1027, 1039 (*Dominguez-Curry*) [noting that "a single discriminatory comment by a … decisionmaker is sufficient to preclude summary judgment for the employer"].) That the motion for summary judgment was granted on this claim demonstrates the exclusion was prejudicial.[5]

---

[5] We also note that Khalil's Opposition Declaration suggests that, instead of the pay reduction, other lower forms of discipline could have been imposed. Given this

22.

DSH contends that, unlike *Colarossi*, there was no other evidence in this case that was consistent with a retaliatory animus, which means that Khalil's declaration does not establish a triable issue of fact. We disagree with DSH's argument. First, there is no requirement that direct evidence of discriminatory animus be supported or confirmed by other evidence. The rule is that very little direct evidence of retaliatory animus is necessary to overcome a summary judgment motion. (*Zamora*, *supra*, 71 Cal.App.5th at p. 35.) In fact, the Ninth Circuit has recognized that a single statement by the decisionmaker can be sufficient. (*Dominguez-Curry*, *supra*, 424 F.3d at p. 1039.) Second, there is additional evidence that is consistent with Paragraph 34 and Paragraph 2. For example,[6] in April 2018, Khalil complained to Price about discrimination and retaliation. Price did not forward Khalil's complaints to the EEO office, which appears to be contrary to Hospital policy. However, Price initiated two investigations against Khalil for complaints received by others (Lai and Withrow). Further, Price was aware that the OSI report included Lai's offensive comments about Khalil's national origin and slaves. Despite agreeing that the comments were improper and that something should be done, it appears that Price failed to ensure that any further follow up, investigation, discussions, or corrective actions of any kind were taken against Lai. Viewing this evidence in the light most favorable to Khalil, Price was willing both to take adverse action against Khalil for violating policy and to institute investigations against Khalil, yet he overlooked discriminatory statements by Lai against Khalil and disregarded Hospital policy by not

---

possibility, as well as Khalil's uniformly positive performance reviews prior to the pay reduction, it is not clear that the pay reduction would have been imposed irrespective of Khalil's protected activities. (Cf. *Zamora*, *supra*, 71 Cal.App.5th at p. 34 [explaining that, if a trier of fact accepts direct evidence of retaliatory animus, an employer generally must demonstrate that it would have taken the same actions irrespective of an employee's protected activities].)

[6] We do not purport to identify every piece of evidence that could be viewed as consistent with Paragraph 34 and Paragraph 2.

informing the EEO officer of Khalil's complaints of discrimination. In other words, Price's conduct suggests a double standard with respect to Khalil's complaints of harassment and retaliation that could be explained by a retaliatory animus. A reasonable trier of fact could view this evidence as providing additional support for Paragraph 34 and Paragraph 2 and the ultimate conclusion that Price harbored a retaliatory animus against Khalil because of Khalil's protected activity.

## DISPOSITION

The judgment is reversed. Appellant is awarded his costs on appeal.

POOCHIGIAN, Acting P. J.

WE CONCUR:

SMITH, J.

DE SANTOS, J.

24.